UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| HOLLY R., Plaintiff, v. COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, Defendant. | NO: 4:17-CV-5103-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
|---|---|

BEFORE THE COURT are the parties' cross motions for summary judgment (ECF Nos. 13, 14). The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.*, at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted).

The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). Otherwise, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Bray*, 554 F.3d at 1222.

**BACKGROUND**

On May 6, 2013, Plaintiff filed an application for supplemental security income benefits under Title XVI, alleging an onset date of January 1, 1995. Tr. 29. Plaintiff, through her attorney, amended the onset date to May 6, 2013, the date of the application. Tr. 29. Plaintiff's claim was denied initially and upon reconsideration. Tr. 29, 82, 95. Plaintiff filed a written request for a hearing, which was held on February 14, 2013 before an Administrative Law Judge (ALJ). Tr. 29, 120.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 6, 2013, the alleged onset date. Tr. 31. At step two, the ALJ found that Plaintiff had the following severe impairments: "mood disorder (alternatively referred to as depressive disorder and major depressive disorder), anxiety disorder (alternatively referred to as generalized anxiety disorder and posttraumatic stress disorder (PTSD)), borderline personality traits, degenerative disc disease, asthma, and obesity[.]" Tr. 31. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 32. The ALJ then concluded:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). She can frequently stoop. She has no limitation in terms of climbing, balancing, kneeling, crouching, and crawling. She must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. She can understand, remember, and carry out

simple, routine tasks. She can have occasional and superficial contact with coworkers. She can have no public contact.

Tr. 33. At step four, the ALJ found Plaintiff is unable to perform past relevant work. Tr. 37. The ALJ then found claimant is a "younger individual," has "limited education[,] and is able to communicate in English[.]" Tr. 37. After taking input from a vocational expert, the ALJ concluded that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" Tr. 37. Specifically, the ALJ identified the positions of housekeeping cleaner, production assembler, and packing line worker. Tr. 38. On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act. Tr. 38.

Plaintiff thereafter filed a request for review with the Appeal's Council. Tr. 22. The Appeal's Council denied the request. Tr. 1. The ALJ's decision is thus the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.201.

**ISSUES**

Plaintiff raises two issues for review:

    1. Did the ALJ err in weighing the medical opinions in the record?

    2. Did the ALJ provide an incomplete hypothetical at step five?

ECF No. 13 at 7.

## DISCUSSION

A. **Review of Medical Opinions**

Plaintiff takes issue with the ALJ's treatment of the medical opinions of Dr. Moon, Dr. Hipolito, and Dr. Carstens. ECF No. 13 at 9-13.

A treating physician's opinions are generally entitled to substantial weight in social security proceedings. *Bray*, 554 F.3d at 1228 (citation omitted); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians.") (citing 20 C.F.R. § 404.1527)). "[I]f a treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight.'" *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(2)) (brackets omitted). "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). However, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion," the ALJ need only provide "specific and legitimate reasons that are supported by substantial evidence" to reject the opinion. *Id.*

Here, the opinions of Dr. Moon, Dr. Hipolito, and Dr. Carstens were contradicted by other opinions, and thus the ALJ need only provide a specific and legitimate reasons for discounting their opinions.

1. **Dr. Moon**

Plaintiff argues the ALJ did not give enough explanation in discounting the opinion of Dr. Moon. ECF No. 13 at 11. In the underlying opinion, the ALJ stated the assigned RFC is *consistent* with the assessment of Dr. Moon *except* that the ALJ accorded "little weight" to the low Global Assessment of Functioning (GAF) scores, reasoning the low "scores are inconsistent with the claimant's treatment history, her performance on mental status examinations, and her documented daily activities and social functioning set forth above." Tr. 36-37. The ALJ also noted that Dr. Moon "did not review any records" and otherwise found that "Dr. Moon's opinion is internally inconsistent with the remainder of his assessment showing no more than moderate limitations in social and cognitive functioning." Tr. 37.

Plaintiff argues the ALJ's reasons for giving the opinion of Dr. Moon "little weight" are "not valid because [the ALJ] failed to state with any specificity which examinations and activities were allegedly contrary to Dr. Moon's findings." ECF No. 13 at 11 (citing TR. 37). Plaintiff argues that, as a consequence, "[t]he ALJ's analysis is beyond meaningful review and does not rise to the level of specific and

legitimate reasons, supported by substantial evidence." ECF No. 13 at 11. The Court disagrees.

Importantly, the ALJ's discussed in detail Plaintiff's daily living activities and social functioning. The ALJ found Plaintiff only had mild restrictions in her daily living, discussing how she spent time with friends several times a week, had a boyfriend (now ex-boyfriend) with whom she went out for dinner and drives, went to church, exercised regularly, interacted with friends and some family members on Facebook, and played mahjong and "cognitive" games, *inter alia*. Tr. 32-33. The ALJ then found Plaintiff had moderate limitations in social functioning, citing Plaintiff's interaction with friends, her ability to take the bus, her regular attendance in chapel when at the Mission, her social outings with her ex-boyfriend, and her "productive and appropriate interactions with treating and evaluating personnel." Tr. 33.

The ALJ then found that Plaintiff has moderate difficulties with regard to concentration, persistence, and pace, noting she plays mahjong and cognitive games and that her treatment history and performance on mental status examinations are inconsistent with a more restrictive limitation. Tr. 32-33. The ALJ then reviewed Plaintiff's mental status examinations and the underlying findings in detail, Tr. 34-35, which were generally unremarkable.

Plaintiff argues the ALJ's reasoning is too opaque for this Court to review, but this is not the case. The ALJ specifically noted that Dr. Moon's opinion was internally consistent because Dr. Moon's assessment showed "no more than moderate limitations in social and cognitive functioning." Tr. 37. This demonstrates the ALJ found the moderate limitations were inconsistent with the low GAF scores. This insight, along with the ALJ's detailed discussion about Plaintiff's daily activities, social activities, and mental health exams, provides a sufficient basis for review.

Upon review, the ALJ reached a reasonable conclusion in finding the low GAF scores were inconsistent with the moderate limitations. Notably, the ALJ found – and Plaintiff does not challenge – only mild and moderate limitations with respect to daily living, social functioning, and concentration, persistence, and pace.[1] However, according to the *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition,[2] the low GAF scores of 48 and 50 would mean the

---

[1] Plaintiff complains that "the ALJ suggest[ed] the findings in the mental exam were normal." ECF No. 13 at 11 (citing Tr. 36), but the record does not support this claim and Plaintiff does not give any further explanation.

[2] Accessed on July 17, 2018 via https://www.webmd.com/mental-health/gaf-scale-facts.

claimant is suffering from "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." Thus, it is clear the relatively minor limitations could reasonably be seen as inconsistent with the low GAF scores. The ALJ did not err in reaching this conclusion, and inconsistency with daily living activities is a specific and legitimate basis for discounting an opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600–02 (9th Cir. 1999).

Moreover, Plaintiff does not address the alternative ground for discounting the opinion – internal inconsistency – or adequately defend against the criticism that Dr. Moon did not review the record. Thus, even if Plaintiff's argument were valid, Plaintiff's failure to address these alternative grounds is fatal to Plaintiff's challenge. Further, as is the case for this and the following issues, Plaintiff does not explain, or even argue, how the alleged err resulted in a less restrictive RFC – *i.e.* that the mistake led to harmful error. Plaintiff does not identify any *limitation* posed by Dr. Moon – or otherwise resulting from a low GAF score – that was not included in the RFC. Indeed, Plaintiff does not even argue that Dr. Moon's findings are actually inconsistent with Plaintiff's examinations and activities— Plaintiff only argues the ALJ failed to specifically identify the inconsistencies.

Plaintiff has thus failed to meet her burden. *Valentine v. Comm'r Soc. Sec. Admin*, 574 F.3d 685, 692, n.2 (9th Cir. 2009); *Shinseki*, 556 U.S. at 409-10.

2. **Dr. Hipolito**

Plaintiff states the "ALJ indicated that [Plaintiff's] RFC was consistent with Dr. Hipolito's evaluation but then provided reasons to reject the opinion" and argues "[t]his reasoning is confusing and it is not clear exactly what weight the ALJ gave Dr. Hiplito's opinion." ECF No. 13 at 12. Plaintiff concludes: "[a]ssuming the ALJ meant to reject the opinion, [the ALJ] did so improperly." ECF No. 13 at 12. Plaintiff then proceeds to counter the ALJ's criticisms of Dr. Hipolito.

Plaintiff does not point to any limitation posed by Dr. Hipolito that was not adopted by the ALJ. Regardless, assuming the ALJ discounted the opinion of Dr. Hipolito, the Court finds the ALJ provided sufficient reasons for doing so. "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008)). Here, the ALJ found "Dr. Hipolito did not review any imaging and thus relied on the claimant's unreliable subjective complaints." Tr. 36. Plaintiff does not challenge the finding of non-credibility or otherwise dispute this

finding. As such, the ALJ provided a specific and legitimate reason supported by substantial evidence for discounting the opinion.

Moreover, as above, Plaintiff's has failed to explain how Dr. Hipolito's opinion is actually inconsistent with the assigned RFC. It is Plaintiff's burden to demonstrate that the ALJ's alleged failure was not harmless—*i.e.*, Plaintiff must demonstrate the assigned RFC does not include a limitation posed by Dr. Hipolito. *Valentine*, 574 F.3d at 692, n.2; *Shinseki*, 556 U.S. at 409-10. Plaintiff has failed to meet this burden by merely assuming the ALJ rejected the opinion—rather than explaining what limitations the ALJ failed to take into account in fashioning the RFC.

3. **Dr. Carstens**

Plaintiff argues that "Dr. Carstens reviewed the medical evidence and stated [Plaintiff] was disabled and found an onset date of December 18, 2014." ECF No. 13 at 13 (citing Tr. 629). Plaintiff notes "[t]he ALJ mentioned Dr. Carstens' opinion, but did not discuss it or state what weight was given to it" and argues "[t]he ALJ should have specifically stated what weight was given to this opinion and why." ECF No. 13 at 13. Defendant, on the other hand, argues Dr. Carstens did not opine that Plaintiff was disabled on the page cited by Plaintiff, but merely summarized the reports of Dr. Moon. ECF No. 14 at 5. Defendants contend the ALJ did not need to accord weight to Dr. Carstens' opinion since, "[w]here it is not

clear that a physician actually concluded that the claimant was disabled, the ALJ need not reject that physician's opinion separately." ECF No. 14 at 5 (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

A review of the record supports Defendant's contention that Dr. Carstens merely reviewed the opinion of Dr. Moon, as opposed to providing any opinion as to Plaintiff's limitations. *See* TR. 629-30. As such, Plaintiff has failed to demonstrate the ALJ rejected any conclusion of Dr. Carstens. The ALJ thus did not err in not directly weighing the opinion. *Turner,* 613 F.3d at 1223 (ALJ does not need to provide any reasons for rejecting a medical report where the ALJ did not reject any of the report's conclusions). Plaintiff does not point to any other basis for error, such as an additional limitation opined by Dr. Carstens that is not included in the RFC. Plaintiff has thus failed to demonstrate the ALJ committed harmful error. *Valentine*, 574 F.3d at 692, n.2; *Shinseki*, 556 U.S. at 409-10.

B. **Step Five**

Plaintiff argues the ALJ erred at step five by failing to include all the "limitations set forth by all the treating, examining, and reviewing providers" in the hypothetical posed to the vocational expert and eventually relied on by the ALJ. ECF No. 13 at 14. Plaintiff does not explain what limitations were not included.

A review of the opinion and transcript demonstrates the ALJ proffered a hypothetical that fully included all the limitation in the assigned RFC. At the hearing, the ALJ proffered the following hypothetical question to the vocational expert:

> I want to ask you some hypothetical questions now. I'd ask you to assume a hypothetical individual with the past work you've described, the age and the education of the Claimant. I'd ask that you further assume this individual is able to work at the light exertional level, except this individual could unlimitedly climb ramps and stairs, ladders, ropes and scaffolds, unlimitedly balance, frequently stoop, unlimitedly knee, crouch and crawl. Would need to avoid concentrated exposure to fumes, odors, dusts, gasses and poor ventilation. Would be able to understand, remember and carry out simple, routine tasks, and would be able to have occasional and superficial contact with coworkers and no public contact -- general public contact.

Tr. 77. The ALJ found Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 416.967(b). She can frequently stoop. She has no limitation in terms of climbing, balancing, kneeling, crouching, and crawling. She must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. She can understand, remember, and carry out simple, routine tasks. She can have occasional and superficial contact with coworkers. She can have no public contact.

Tr. 33.

While Plaintiff argues this was error at step five, Plaintiff's complaint is more accurately labeled as a challenge to the RFC determination because the hypothetical posed by the ALJ was merely a restatement of the RFC determination. Regardless of the label, though, Plaintiff has not demonstrated the ALJ committed

harmful error. Plaintiff does not point to any specific limitations that should have been included in the RFC (or in the hypothetical). Plaintiff has thus failed to demonstrate the ALJ committed harmful error. *Valentine*, 574 F.3d at 692, n.2; *Shinseki*, 556 U.S. at 409-10.

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 14) is **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

**DATED** July 17, 2018.

THOMAS O. RICE
Chief United States District Judge